**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

MONTE BONE, )
)
Plaintiff, )
)
vs. )
)
)
UNUM LIFE INSURANCE )
COMPANY OF AMERICA, )
)
Defendant. )

**COMPLAINT**

COMES NOW Plaintiff, Monte Bone, and for his claims and causes of action against Defendant, Unum Life Insurance Company of America, states as follows:

PARTIES

1. Monte Bone ("Bone") is a resident and citizen of the State of Missouri.

2. Defendant Unum Life Insurance Company of America ("Unum") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Unum.

JURISDICTION AND VENUE

3. Bone brings his claim pursuant to the Employment Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

STATEMENTS OF FACT

9. Bone worked as a Class 13 Machine Adjuster for Lake City Ammunition Plant ("Lake City").

10. Unfortunately, during Bone's employment, he became unable to perform the duties of his job due to multiple impairments. Bone's dementia and its subsequent symptoms deteriorated to the point that he was no longer able to work because of a sharp loss of short-term memory that required Bone to be supervised by his wife.

11. Bone ceased working due to at least the following impairments:

    a. Early Onset Dementia, G30.0.
    b. Severe Memory Loss, R41.3
    c. Hypertension, I10.
    d. Chronic Cough, R05.3

12. Lake City sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

13. The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

14. The Plan offered disability benefits to qualifying Lake City's employee Plan participants.

15. At all relevant times, Bone has been a participant and covered person under the terms of the Plan.

16. Unum is the administrator of the Plan.

17. Lake City delegated or attempted to delegate the function of issuing LTD claim determinations to Unum.

18. Lake City and Unum entered into an administrative services contract through which Lake City paid Unum for acting as claims administrator.

19. Bone became unable to perform the material and substantial duties of his occupation on January 26, 2021.

20. On January 26, 2022, Bone submitted Notice of Claim, Representation Authorization, Third Party Authorization to Release, and a list of Bone's medical providers to Unum.

21. On February 2, 2022, Bone called Unum to confirm receipt of Notice of Claims. Unum communicated that they had no received the fax.

22. On February 4, 2022, Bone resent the Notice of Claim, Representation Authorization, Third Party Authorization to Release and a list of Bone's medical providers to Unum.

23. On February 18, 2022, Bone re-sent the Notice of claim packet upon notification that Unum still did not have the Notice of Claim forms.

24. On March 8, 2022, Bone called Unum to get an update. Unum placed Bone on hold for approximately 20 minutes and Unum told Bone a specialist would call back.

25. On March 16, 2022, Bone received a voicemail from an Unum claim manager indicating that the claim had been opened.

26. On March 16, 2022, Bone returned the call to the Unum claim manager and left a voicemail asking for a claim number to be provided.

27. On March 17, 2022, Bone received a voicemail from the claim manager stating that the claim number was 20867217.

28. On May 15, 2022, Bone received an e-mail from Unum asking for medical records.

29. On August 19, 2022, Bone received a denial letter.

30. On August 22, 2022, Bone requested a copy of his claim file from Unum.

31. On August 24, 2022, Bone received a copy of his claim file from Unum.

32. On February 7, 2023, Bone submitted a written appeal to Unum's August 19, 2022, denial.

33. On March 7, 2023, Bone received a letter from Unum providing a peer review of Bone's medical records and claim, inviting a response.

34. On March 17, 2023, Bone sent Unum a letter responding to the Peer Review Reports provided by Unum.

35. On March 21, 2023, Bone received a final denial letter from Unum.

36. The Plan and Policy articulate the conditions under which a Plan participant is entitled to LTD benefits.

37. The terms "Disability/Disabled" are defined as follows:

> You are disabled when Unum determines that:
>
> - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

38. The Policy defines "material and substantial duties" as follows:

> **MATERIAL AND SUBSTANTIAL DUTIES** means duties that:
>
> - are normally required for the performance of your regular occupation; and
> - cannot be reasonably omitted or modified.

39. Unum claimed to have reviewed the record and made the following explanation about Bone's denial:

**Initial Claim Decision:**

Mr. Bone ceased working on January 19, 2021 and initially reported a disability beginning January 26, 2021 due to cognitive impairment.

Based on information received, we understand that Mr. Bone was suspended from work due to a safety violation and his position was terminated on January 22, 2021. His coverage under the Long Term Disability policy would have ended on the date he was terminated.

Under the terms of the Long Term Disability policy your client is required to provide Proof of Claim. This includes the date disability begins and information that shows he had a sickness or injury resulting in his inability to perform the material and substantial duties of his regular occupation while he was covered under the policy.

In their letter to you dated August 18, 2022, The Benefit Center explained that because you had not provided proof that Mr. Bone was disabled prior to the date his coverage under the policy ended, Long Term Disability benefits could not be approved.

40. The rationale for Unum's denial is faulty because it does not adequately address the true reason for his safety violation and resulting loss of his job. The reason for Bone's termination of employment was his disability, Bone forgot to lock out a machine because of severe memory loss and cognitive dysfunction. The very event of his termination was direct tangible evidence of his inability to work due to disability. His disability – memory loss – made him unable to perform the material duties of his job. His inability to perform the duties of his job is what led to his termination. His termination was, in fact, proof of his inability to perform the material duties of his job.

41. Both ERISA and the Policy itself require such denials to provide specific information, including:

a. The specific reason(s) the claim was denied.

b. Specific reference to the Policy provision(s) on which the denial was based.

c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

d. If the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically-related exclusion or limitation involved in the decision.

e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

42. Unum's denial letter does not specifically support its decision. The denial letter mentions no summary of provider treatment or even attempts to make a review of the merits of the claim.

43. Bone has at all relevant times met the definition of "Disability or Disabled" under the Plan and is entitled to benefits.

44. Bone has exhausted his administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

45. Bone realleges the preceding paragraphs as if fully set forth herein.

46. Bone is entitled to all unpaid and accrued LTD benefits, as Unum:

a. Made an unfavorable decision without substantial evidence;

b. Failed to properly consider Bone's medical impairments and resulting limitations; and

c. Issued an unfavorable decision that was arbitrary and capricious.

47. Unum has not satisfied its obligation to pay Bone's LTD benefits.

48. Unum denied LTD benefits when the applicable medical record supports upholding LTD

benefits.

49. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Bone prays for judgment against Unum for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

COUNT II
29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

50. Bone realleges the preceding paragraphs as if fully set forth herein.

51. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

52. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

53. Unum, the Plan's designated claims administrator, is a fiduciary.

54. Bone participated in and benefitted from the Plan as previously indicated.

55. Unum's claims management practices are motivated by financial incentives in its administrative services agreement with Lake City.

56. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Unum operates under an inherent conflict of interest.

57. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

58. Unum breached its fiduciary duty in:

a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations;

b. Improperly concluding and inferring that Bone's cessation at work was the result of a voluntary decision on his part, rather than due to a disability; and

c. Refusing to utilize fully executed authorizations to attempt to obtain all relevant evidence to Bone's claim for benefits;

59. Unum denied Bone's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

60. Unum failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Bone and the Plan's participants and beneficiaries generally.

61. Unum's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

62. Unum's violations of regulations alone allow Bone the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

63. Unum's violations of federal regulation also subject its decision to *de novo* review.

64. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Bone prays for an order that Unum retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations;

for an injunction preventing further unlawful acts by Unum in its fiduciary capacity; for an equitable accounting of benefits that Unum has withheld; for the disgorgement of profits enjoyed by Unum in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

**BURNETTDRISKILL, Attorneys**

By: /s/ Paul J. Taylor
Paul J. Taylor, Mo. # 72159
Derrick A. Pearce, Mo. #42793
Kyle H. Sciolaro, Mo. #64568
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
ptaylor@burnettdriskill.com
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF